PAUL LANNOM et al., Plaintiffs, v. ROBERT KOSCO, Defendant and Third-Party Plaintiff-Appellant (The County of Williamson, Third-Party Defendant-Appellee).

Fifth District    No. 5—92—0137

Opinion filed July 20, 1993.

William Kent Brandon and Christy Solverson, both of Brandon, Schmidt & Palmer, of Carbondale, for appellant.

Dennis E. Rose, of Donovan, Rose, Nester & Szewczyk, P.C., of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This action was brought by Paul and Nadine Lannom to recover damages for personal injuries to Paul and loss of consortium to Nadine as a result of the alleged negligence of Robert Kosco. Paul Lannom was injured while working for the County of Williamson highway

department when the car being driven by Kosco struck him. Kosco filed a third-party complaint for contribution against the County of Williamson (County), Lannom's employer, alleging that the County was guilty of willful and wanton misconduct in parking a County truck on the wrong side of the road without hazard lights or warning devices.

Lannom was allegedly injured on November 15, 1988. His complaint against Kosco was filed February 16, 1989. Kosco's third-party complaint against Williamson County was originally filed on March 9, 1989. The case was set for trial on December 10, 1991.

On April 18, 1991, the Illinois Supreme Court announced its decision in *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023, holding that an employer's liability in contribution is limited to the amount of its workers' compensation liability. On December 2, 1991, a petition for rehearing of the *Kotecki* decision was denied. The mandate in *Kotecki* issued on December 12, 1991.

On December 3, 1991, relying on *Kotecki*, the County of Williamson filed a motion to strike the *ad damnum* clause of Kosco's third-party complaint. Plaintiffs Paul and Nadine Lannom objected to the motion, arguing that the decision in *Kotecki* should be applied prospectively only and not to the case at bar. Defendant and third-party plaintiff Kosco also objected to the motion to strike for the same reason.

On December 9, 1991, again relying on *Kotecki*, Williamson County filed a motion to limit its liability to the amount of its workers' compensation lien. At a hearing held December 10, 1991, the County made an oral motion to dismiss the third-party complaint against it, stipulating that it would waive its workers' compensation lien. All motions were argued at this hearing. The court concluded that *Kotecki* had application to the case before it, finding nothing in the supreme court's decision to indicate the court intended it to have only prospective application. The court granted the County's motion to dismiss the third-party complaint upon waiver of its workers' compensation lien. A written order was filed on February 7, 1992, finding that the County's potential liability for contribution is limited to the amount of its obligation under the workers' compensation statute, that *Kotecki* is not of prospective application only, and that *Kotecki* is equally applicable where willful and wanton misconduct rather than negligence is alleged.

Robert Kosco, defendant and third-party plaintiff, appeals, presenting four issues for our review: (1) whether the trial court erred in ruling that *Kotecki* is not of prospective application only; (2) whether

the County of Williamson waived its *Kotecki* defense (limited liability) by purchasing liability insurance for unlimited contribution protection; (3) whether the trial court erred in dismissing the contribution action against plaintiff's employer, the County of Williamson, where the County allegedly committed willful and wanton misconduct; and (4) whether the trial court erred in dismissing the third-party complaint and not requiring the County of Williamson to participate in the trial.

As a general rule, a decision will be applied retrospectively unless the court expressly declares its decision to be a clear break with the past, such as when the court explicitly overrules its own past precedent, disapproves a practice it had previously sanctioned, or overturns a well-established body of lower-court authority. (*People v. Boswell* (1985), 132 Ill. App. 3d 52, 56, 476 N.E.2d 1154, 1158, *rev'd on other grounds* (1986), 111 Ill. 2d 571, 488 N.E.2d 273 (supervisory order).) It is within a court's inherent power to give a decision prospective or retrospective application. (*Boswell*, 132 Ill. App. 3d at 56, 476 N.E.2d at 1158.) A new rule or decision will be given prospective operation whenever injustice or hardship due to justifiable reliance on the overruled decisions would thereby be averted. *Elg v. Whittington* (1987), 119 Ill. 2d 344, 357, 518 N.E.2d 1232, 1238.

The general test for prospective application is whether the decision establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. If this criterion is met, that is, if the decision sought to be applied prospectively establishes a new principle of law, prospective or retrospective application will depend on whether, given the purpose and prior history of the newly established rule, its operation will be retarded or promoted by prospective or retroactive application and whether prospective application is mandated by the balance of equities. *Elg,* 119 Ill. 2d at 357, 518 N.E.2d at 1238.

The first district and third district of this court have decided the issue of whether *Kotecki* should be given prospective or retrospective application. In *Norberg v. Centex Homes Corp.* (1993), 247 Ill. App. 3d 267 (modified opinion on rehearing), the first district of our court stated, "We read the majority opinion in *Kotecki* to be a recognition that its holding constitutes a change in the law," and "We conclude, therefore, that the supreme court recognized that in *Kotecki* it established a new principle of law." (247 Ill. App. 3d at 272-73.) The court further found that retrospective application of the *Kotecki* decision would hinder its application and result in prejudice to many defendants and held that the *Kotecki* decision applies only to cases in which

trial had not yet commenced on the date the *Kotecki* opinion was released.

In *Kocik v. Commonwealth Edison Co.* (1993), 242 Ill. App. 3d 679, 610 N.E.2d 766, the third district of this court found that, in *Kotecki*, the supreme court specifically rejected the argument that its holding was changing the law, the supreme court stating that its decision simply reflected the natural accommodation necessary to reconcile the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) and the Contribution Act (Ill. Rev. Stat. 1987, ch. 70, par. 301 *et seq.*), which accommodation had been foreshadowed in the court's earlier opinion in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382. The third district held that *Kotecki* did not establish a new principle of law but was merely a reconciliation of two potentially conflicting statutes which had been foreshadowed in *Doyle*. The court held that *Kotecki* should be retrospectively applied to cases which had not come to trial prior to the *Kotecki* decision.

■■ It is clear that, under either of these analyses, the decision in *Kotecki* would apply to the case at bar, which had not come to trial prior to the *Kotecki* decision. Indeed, even the petition for rehearing was denied prior to the instant case coming to trial, although the mandate did not issue until two days after the scheduled trial date.

In any event, we find the reasoning and analysis of the *Kocik* decision to be persuasive. We agree with the third district that the supreme court in *Kotecki* took pains to emphasize that its decision therein did not reflect a change in the law in that it did not overrule clear past precedent on which litigants may have relied nor did it decide an issue of first impression whose resolution was not clearly foreshadowed. The supreme court explicitly stated that there is no clear past precedent to be overruled on this issue because, although *Doyle* did hold that a negligent employer is liable for contribution to a third party regardless of the Workers' Compensation Act, *Doyle* did not answer the question as to the amount of contribution for which an employer may be liable under the Contribution Act. The supreme court also explicitly recognized in *Kotecki* that its decision therein had been clearly foreshadowed by its decision in *Doyle*, in which the court stated that "some accommodation" between the Contribution Act and the Workers' Compensation Act would be necessary in the future. The court stated that the *Kotecki* decision is that "natural accommodation" which was foreshadowed in *Doyle*. Finally, we are reassured of the correctness of our analysis by the supreme court's denial of the petition for rehearing in *Kotecki*, which specifically asked the court to announce whether its ruling was of prospective or retrospective appli-

cation. The supreme court's silence on this question indicates to us that the court intended its decision to have retrospective application according to the general rule.

We cannot agree with the conclusion of the first district of our court that the supreme court considered *Kotecki* to constitute a change in the law. The first district has, in our opinion, misunderstood the language of the supreme court and has misread the *Kotecki* opinion. See also *Kalp v. American National Can Co.* (N.D. Ill. May 17, 1991), No. 90—4910 (which held that *Kotecki* does not overrule clear past precedent upon which litigants may have relied or decide an issue of first impression whose resolution was not clearly foreshadowed); *Doran v. Corn Products-U.S., a Division of C P C, International, Inc.* (N.D. Ill. 1991), 776 F. Supp. 368 (same holding).

In any event, even were we to agree with appellant that *Kotecki* does establish new law, we do not agree that operation of the *Kotecki* rule will be promoted by prospective application of the decision or retarded by retrospective application of the decision or that the balance of equities mandates prospective application. To the contrary, we think that, given its purpose and prior history, operation of the *Kotecki* rule will be promoted by retrospective application and retarded by prospective application. The purpose of the *Kotecki* rule is to reconcile the potential conflict between the Workers' Compensation Act and the Contribution Act. The rule established in *Kotecki* was found by the supreme court to be the fairest and most equitable balance between the competing interests of the employer and the third-party plaintiff as reflected in these conflicting statutes. By applying *Kotecki* to all pending cases, the purpose of the rule is advanced. We see no advantage to applying the rule only to cases arising after the *Kotecki* decision.

Finally, the balance of equities does not mandate prospective application. We see no great detriment to injured plaintiffs or direct defendants as a result of retrospective application of the *Kotecki* rule. It is highly unlikely that either injured plaintiffs or negligent defendants relied to their detriment on what they thought the law was prior to *Kotecki*. As our supreme court stated in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 26, 163 N.E.2d 89, 96:

> "It should be borne in mind that we are not dealing with property law or other fields of the law where stability and predictability may be of the utmost concern. We are dealing with the law of torts where there can be little, if any, justifiable reliance and where the rule of *stare decisis* is admittedly limited."

The supreme court recognized in *Molitor* that it is not likely that parties to a negligence action have somehow controlled their actions based upon a rule of law. While in *Molitor* it was found that school districts did detrimentally rely on the prior rule of law in failing to purchase liability insurance, the case at bar is not such a case. It is not likely that either the injured plaintiff or the negligent direct defendant somehow acted in detrimental reliance on the supposed rule of law that a negligent employer had unlimited liability in contribution.

We reject as speculative the opinion of the first district of our court that, unable to foresee the result in *Kotecki*, many defendants chose a trial strategy they would not otherwise have chosen. That court adopted the reasoning that defendants might be better served by abstaining from filing a third-party action against a negligent employer because a jury, unaware of the employer's limited liability, might be more likely to return a larger verdict against two defendants than it would against only the direct defendant. The option of not filing a third-party action against the employer has always been available to the direct defendant and remains available. However, the direct defendant thereby gives up his right to seek contribution, which right to contribution remains available, although on a limited basis.

On the other hand, it is unfair to require employers to pay amounts in contribution over and above what is statutorily required of them, that is, the limit of their workers' compensation liability. To hold otherwise would effectively subvert the entire scheme of the Workers' Compensation Act, which established a trade-off between the employer and employee. Under the scheme of the Act, the employee gave up his common-law right to sue his employer in tort, but recovery for injuries became automatic without regard to fault on his part. The employer gave up its right to plead common-law defenses and was compelled to pay, but its liability was limited and fixed. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 180, 384 N.E.2d 353, 356.

We agree with the trial court that the decision in *Kotecki* should not be limited to prospective application but should apply to the case at bar, which had not yet come to trial at the time the *Kotecki* decision was rendered.

■ Appellant's second argument is that Williamson County has waived its *Kotecki* defense, limited contribution liability, by purchasing liability insurance for unlimited contribution protection. We note that this argument was not raised before the trial court, and we find that it is thereby waived. It is axiomatic that questions not raised in the

trial court are deemed waived and may not be raised for the first time on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879.) As we have stated, this issue was never raised before the trial court, the parties did not argue it before the trial court, and the trial court did not have an opportunity to decide this question and in fact did not decide it. We further note that the record does not support appellant's contention that Williamson County had purchased liability insurance for unlimited contribution protection. We therefore find that this issue is waived for purposes of review and decline to address it.

■ The third argument raised on appeal is that the trial court erred in finding that *Kotecki* applied where willful and wanton misconduct, not mere negligence, was alleged on the part of the employer and in dismissing the contribution action against the County of Williamson on the basis of *Kotecki*. Appellant argues that *Kotecki* does not apply where a direct defendant seeks contribution for the willful and wanton misconduct, rather than the simple negligence, of the third-party employer.

Although the contribution action in *Kotecki* alleged negligence by the third-party employer, we find nothing in the language or logic of *Kotecki* which limits its holding only to cases involving claims of negligence against the third-party employer. The aim of the *Kotecki* decision was to reconcile potentially conflicting provisions of the Workers' Compensation Act and the Contribution Act. The decision in *Kotecki* sought to establish a fair and equitable balance between the competing interest of the direct defendant in not paying more than its established fault and the interest of the employer in not losing the protection that the Workers' Compensation Act is designed to provide. The balance struck by the court in *Kotecki* allows the direct defendant to obtain limited contribution but substantially preserves the employer's interest in not paying more than its workers' compensation liability. As the court pointed out in *Kotecki*, the Workers' Compensation Act clearly shows an intent that the employer only be required to pay an employee the statutory benefits. *Kotecki*, 146 Ill. 2d at 165, 585 N.E.2d at 1028.

The Workers' Compensation Act provides for limited liability on the part of the employer for any "accident" resulting in injury to an employee while at work, whether that accident and injury are a result of negligence or willful and wanton misconduct. Only intentionally caused injuries are outside the bounds of the Workers' Compensation Act. (*Mier v. Staley* (1975), 28 Ill. App. 3d 373, 381, 329 N.E.2d 1, 8.) Appellant's third-party complaint against Williamson County does not

allege that the county intentionally caused plaintiff's injuries. Indeed, the original third-party complaint alleged only negligence on the part of Williamson County; it was amended to allege willful and wanton misconduct only in response to the County's motion to dismiss based on the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*), which provides immunity to governmental units for negligence, but not for willful and wanton misconduct.

Accordingly, the Workers' Compensation Act applies to the injuries received by the plaintiff and serves to limit the amount for which the plaintiff's employer, Williamson County, can be held liable to plaintiff. Under *Kotecki*, we think that it also limits the amount for which the employer can be held liable in contribution, and we reject appellant's argument that *Kotecki* should not apply to claims for contribution alleging willful and wanton misconduct on the part of the employer. The trial court did not err in holding that the *Kotecki* decision applies to the case at bar.

●4 Appellant's final argument on appeal is that the trial court erred in dismissing the third-party complaint and in not requiring Williamson County to participate in the trial. Appellant argues that the absence of Williamson County as a party will complicate discovery, production of witnesses and documents, and inspection of the employer's premises, resulting in delay and additional expense. We think this is insufficient reason to require the third-party employer, who has waived its right to recoup any amounts paid in workers' compensation and agreed to pay its total liability under the Workers' Compensation Act, to remain a party to the action. Witnesses and other evidence remain available to the plaintiff and direct defendant through subpoena and an action for production or to enter upon real estate. (See Supreme Court Rule 214 (134 Ill. 2d R. 214).) Any additional expense to plaintiff and defendant as a result of the dismissal of the third-party defendant is outweighed by the savings in cost to that third-party defendant, who has already agreed to pay the limit of its liability.

Appellant also argues that dismissal of the third-party claim thwarts the purpose of the joint liability statute, which provides as follows:

"[A]ll defendants found liable are jointly and severally liable for plaintiff's past and future medical and medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant who could have been sued by the plaintiff,

shall be severally liable for all other damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff, shall be jointly and severally liable for all other damages." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1117.)

Appellant argues that where the third-party employer is dismissed from the action, the direct defendant may be found more than 25% at fault, making him jointly and severally liable for all plaintiff's damages, whereas if the third-party employer remains in the case, the direct defendant might be found to be less than 25% at fault, and be only severally liable for certain damages. Thus, for example, where the employer remains a party to the action, the direct defendant may be found to be 20% at fault and the employer 80% at fault. In such a case, the direct defendant would be liable for only 20% of certain damages. However, where the employer is dismissed out of the action, the defendant will be found 100% at fault and will be jointly and severally liable for 100% of those damages.

It occurs to us that this argument may be made anytime a codefendant or third-party defendant settles with the plaintiff and is dismissed from the lawsuit. Where one defendant settles with plaintiff, the remaining defendant's liability is reduced by the amount of the settlement, not the amount of the dismissed defendant's *pro rata* liability. (*Snoddy v. Teepak, Inc.* (1990), 198 Ill. App. 3d 966, 970, 556 N.E.2d 682, 685.) In the instant case, the direct defendant's ultimate liability to plaintiff will be reduced by the amount of the employer's workers' compensation payments to plaintiff. (See Ill. Rev. Stat. 1989, ch. 70, par. 302(c).) Thus, we do not find that the joint liability statute precludes the dismissal of the third-party action against the plaintiff's employer.

In the instant case, where the employer agrees to waive its workers' compensation lien, thereby essentially conceding its liability for contribution, we think dismissal of the action against the employer was proper.

For the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

GOLDENHERSH and MAAG, JJ., concur.